# Duane Morris®

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
SINGAPORE
LOS ANGELES
CHICAGO
HOUSTON
HANOI
PHILADELPHIA
SAN DIEGO
SAN FRANCISCO
BALTIMORE
BOSTON
WASHINGTON, DC
LAS VEGAS
ATLANTA
MIAMI
PITTSBURGH
NEWARK
BOCA RATON
WILMINGTON
CHERRY HILL
PRINCETON
LAKE TAHOE
HO CHI MINH CITY

GREGORY P. GULIA
DIRECT DIAL: 212.692.1027
E-MAIL: gpgulia@duanemorris.com

www.duanemorris.com

September 22, 2010

VIA ELECTRONIC FILING AND FEDEX

Honorable Leonard D. Wexler
United States District Court
Eastern District of New York
944 Federal Plaza
Central Islip, NY 11722

> Re: **Plasma Physics Corp., et al. v. Chi Mei Optoelectronics Corp., et al.**
> **Civil Action No. 2:08-cv-1628-LDW-WDW**

Dear Judge Wexler:

Chi-Mei Optoelectronics Corporation ("CMO") and Chi Mei Optoelectronics Corporation USA, Inc. ("CMO USA") (CMO and CMO USA collectively hereinafter the "Defendants") respectfully request a pre-motion conference to seek leave to file a motion for summary judgment that Plaintiffs are precluded from hereinafter seeking damages for any activity of CMO which occurred prior to July 2006 when Plaintiffs Plasma Physics Corporation and Solar Physics Corporation (collectively "PPC") first provided notice to CMO of its alleged infringement of the patents-in-suit.

### I. Background

In a letter dated July 20, 2006 to CMO, counsel for PPC for the first time provided notice to CMO of the patents-in-suit and alleged that these patents covered CMO's "manufacture of its TFT-LCD flat panel display modules" and "the modules themselves." Following receipt of PPC's letter, CMO met with PPC and provided detailed reasons as to why the Defendants did not infringe the patents in suit. Nevertheless, on April 18, 2008, PPC filed the present action against CMO and CMO USA, alleging infringement of the patents.

PPC is asserting that, if validity and infringement are decided in its favor, PPC is entitled to damages for the entire six year period prior to the complaint, i.e., beginning in April 2002. CMO asserts that the damages period cannot begin before July 2006, because: (1) PPC failed to mark its products and/or to require its licensees to mark their licensed products allegedly covered by PPC's patents-in-suit; and (2) PPC could only assert a damages claim against CMO for its activities outside the U.S. under a theory of inducement of infringement, which requires proof of actual notice to CMO.

### II. Marking Requirement

Under the controlling statute, viz. 35 U.S.C. §287(a), a patent owner can give notice of his patent rights to the public by marking an article covered by his claim(s) with the word "patent" (or the abbreviation "pat") and the applicable patent number. The statute also provides that a patentee who fails to mark the patented device is precluded from seeking damages for the period prior to it

Honorable Leonard D. Wexler
September 22, 2010
Page 2



having provided the defendant with actual notice of the allegedly infringing activity. The patentee has the burden of both pleading and proving compliance with Section 287. *See, e.g., Dunlap v. Schofield*, 152 U.S. 244 (1894); *Sentry Prot. Prods. v. Eagle Mfg. Corp.*, 400 F.3d 910, 918 (Fed. Cir. 2005). Moreover, it is the patentee's burden to plead and to ultimately provide compliance with section 287 in any patent infringement action brought under Title 35 of the United States Code. *See Motorola, Inc. v. United States*, 729 F.2d 765, 770 (Fed. Cir. 1984).

Where a patent owner chooses to license its patents, it is well established that the obligation to mark patented articles extends to the patent owner's licensees. *See Nike, Inc. v. Wal-Mart Stores, Inc.* 138 F.3d 1437, 1446 (Fed. Cir. 1998). Compliance with the marking statute extends to all licensees making, offering for sale, importing and/or selling patented articles. *See, e.g., Soverain Software, LLC. v. Amazon.com, Inc.* 383 F. Supp. 2d 904, 908 (E.D. Tex. 2005). Further, a patentee bears the burden of proving that its licensees complied with the marking statute. *See Nike*, 138 F.3d at 1446.

Historically, the marking requirement was generally applied to apparatus claims. The U.S. Court of Appeals for the Federal Circuit, however, has expanded the marking requirement when there is a "physical device produced by the claimed method that [is] capable of being marked." *American Medical Sys., Inc. v. Medical Eng. Corp.*, 6 F.3d 1523, 1538 (Fed. Cir. 1993). It is undisputed that there are physical devices produced by PPC's licensees that PPC asserts are covered by the patents-in-suit. It is also undisputed that these devices are not marked as required by the statute.

In addition, for cases where method claims are asserted to be infringed under 35 U.S.C. §271(g), section 287(b) expressly requires compliance with the marking and notice requirements set forth in section 287(a) and provides for modifications to the remedies available to a patentee for certain accused infringers. As a manufacturer accused of performing the asserted claimed methods outside of the United States, CMO is not asserting that it is entitled to rely on the modification of the remedies available, only that the unmodified remedies for marking set forth in Section 287(a) apply to its activities.

### III.    PPC Cannot Prove Compliance with the Marking Requirement

As a threshold matter, we note that PPC's complaint does not even plead compliance with section 287 by either PPC or its identified licensees. PPC is therefore not entitled to damages prior to CMO's actual knowledge of the patents-in-suit sometime after July 20, 2006. *See, e.g., Dunlap*, 152 U.S. at 249-50; *Sentry Prot. Prods.*, 400 F.3d at 918.

Moreover, even if PPC had properly plead compliance with the marking statute, PPC cannot prove that either it or its licensees ever complied with that statute. PPC has licensed thirty-seven entities under one or more of the patents in suit. The statute requires that products sold, offered for sale, used and/or imported by these licensees that are within the scope of the patents-in-suit must be marked. None of the executed license agreements for the patents-in-suit, however, requires that any licensee mark its products. PPC has therefore failed to ensure that its licensees complied with the marking requirement of the statute. Consequently, PPC cannot meet its burden of proving its licensees' compliance with the marking statute. PPC is therefore not entitled to damages incurred prior to CMO's actual knowledge of the patents-in-suit sometime after July 20, 2006.

### IV.    Actual Notice of the Patents is Required for Secondary Liability

Using a process in a foreign country does not directly infringe a United States patent that claims that process. *See Dowagic Mfg. Co. v. Minnesota Moline Plow Co.*, 235 U.S. 641, 650 (1919)("The

Honorable Leonard D. Wexler
September 22, 2010
Page 3



right conferred by a patent under our law is confined to the United States and its territories . . . and infringement of this right cannot be predicated of acts wholly done in a foreign country"). Under 35 U.S.C. § 271(g), however, a U.S. process patent is infringed by selling, offering to sell or using in, or importing into, the United States a product made by the patented process. Performing the claimed method outside the U.S. is not an act of infringement; rather the actual importation of and/or selling, offering to sell, or use of the product in the U.S. can be an act of infringement. *See, e.g., Pfizer Inc. v. Aceto Corp.*, 853 F. Supp. 104, 105 (S.D.N.Y 1994)("nothing in the language [of § 271(g)] suggests that a foreign manufacturer, who does not import the product into the United States, may be liable simply because it can foresee that a buyer of its products may ultimately import it into the United States").

Under section 271(b), a person may be secondarily liable for active inducement of infringement of a patent under section 271(g). However, a necessary prerequisite to finding active inducement is proof of an actual intent to cause the acts which constitute direct infringement. *See DSU Medical Corp. v. JMS Co. Ltd.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006)(en banc). Thus, the plaintiff has the burden of showing that the alleged infringer's actions actually induced infringing acts and that the alleged infringer knew or should have known that these actions would induce actual infringement. *See id.* Proof of liability for active inducement under the patent laws therefore requires that the plaintiff show, *inter alia*, that the infringer had actual knowledge of the patent.

V. **Plaintiff is not Entitled to Damages Until CMO Received Actual Notice**

Because direct and contributory infringement both require some activity in the U.S., the sole basis for liability for CMO activities outside the U.S., if any, is for inducement of infringement. As such, CMO's liability is predicated upon CMO's actual knowledge of the patents-in-suit beginning sometime after July 20, 2006.

VI. **Resolving CMO's Motion for Summary Judgment Now is Efficient and Would Simplify the Issues for Trial, As Well As Promote Settlement**

By addressing CMO's proposed motion for summary judgment that the damages period does not begin after July 2006, the Court would be promoting efficiency and judicial economy. If CMO's motion is granted, a significant amount of evidence regarding CMO's activities prior to July 2006 would not need to be introduced, substantially simplifying the issues for trial. Accordingly CMO respectfully requests a pre-motion conference seeking leave to file a motion for summary judgment limiting the damages period to the time period after CMO's actual knowledge of the patents-in-suit sometime after July 20, 2006.

Respectfully submitted,

Gregory P. Gulia

GPG:slj
cc:   All Counsel of Record (via ECF)

DM1\2340168.1